**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United States of America,

Plaintiff,

v.

Oluwadamilola Ogooluwa Bamigboye and Rekeya Lionesha Lee Frazier,

Defendant.

Case No. 25-CR-477 (LMP/JFD)

**ORDER**
**and**
**REPORT & RECOMMENDATION**

---

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for a Report and Recommendation on several pretrial motions filed by Defendants Oluwadamilola Ogooluwa Bamigboye and Rekeya Lionesha Lee Frazier. These motions include: 1) Ms. Frazier's Motion for Expert Discovery (Dkt. No. 47); 2) Ms. Frazier's Motion for Grand Jury Transcripts (Dkt. No. 48); 3) Ms. Frazier's Motion for a Bill of Particulars (Dkt. No. 49); 4) Ms. Frazier's two Motions to Dismiss (Dkt. Nos. 50, 54); Ms. Frazier's Motion to Suppress Evidence (Dkt. No. 51); Mr. Bamigboye's Motion to Dismiss or for a Bill of Particulars (Dkt. No. 52); and Mr. Bamigboye's Motion to Suppress Evidence (Dkt. No. 53). The Indictment charges each defendant with aiding and abetting the other in "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing] with a federal law enforcement special agent from the Department of Homeland Security Investigations," in violation of 18 U.S.C. § 111(a)(1).

There is no dispute as to Ms. Frazier's Motion for Discovery of Expert (Dkt. No. 47) and Ms. Frazier's Motion for Grand Jury Transcripts (Dkt. No. 48). The government has agreed to comply with the Federal Rules of Criminal Procedure as to these issues and disclose required information at the time required by the Rules. Mr. Bamigboye and Ms. Frazier raised no objections to the government's proposed course of action in their briefs. Those non-dispositive motions are therefore granted as unopposed by order.

The remaining motions include: 1) Ms. Frazier's Motion for Bill of Particulars (Dkt. No. 49); 2) Ms. Frazier's two Motions to Dismiss (Dkt. Nos. 50, 54); 3) Ms. Frazier's Motion to Suppress Evidence (Dkt. No. 51); 4) Mr. Bamigboye's Motion to Dismiss or for a Bill of Particulars (Dkt. No. 52); and 5) Mr. Bamigboye's Motion to Suppress Evidence (Dkt. No. 53). The Court held a motions hearing on July 6, 2026. Assistant United States Attorney Bradley Endicott represented the government, Attorney Kevin C. Riach represented Mr. Bamigboye, and Attorney Jean M. Brandl represented Ms. Frazier. Counsel for the government submitted a video recording of an in-custody interview of Mr. Bamigboye (Gov. Ex. 1). Counsel for Mr. Bamigboye submitted certain documents relating to Mr. Bamigboye's pending immigration proceedings (Def. Ex. 1). Neither party called any witnesses to testify. The Court took the pending motions under advisement on August 5, 2026, the date of the most recent filing. For the following reasons, the Court recommends that Ms. Frazier's Motion for a Bill of Particulars (Dkt. No. 49) be granted in part and denied in part; Ms. Frazier's Motion to Dismiss the Indictment (Dkt. No. 50) be granted in part and denied in part; Ms. Frazier's Motion to Suppress (Dkt. No. 51) be granted; Mr. Bamigboye's Motion to Dismiss or for a Bill of Particulars (Dkt. No. 52) be granted in part

and denied in part; Mr. Bamigboye's Motion to Suppress (Dkt. No. 53) be granted; and Ms. Frazier's Second Motion to Dismiss (Dkt. No. 54) be denied without prejudice.

## BACKGROUND

### I. Factual Background

This case arises from an interaction between the two defendants and federal immigration officers on December 10, 2025. The specific facts of the interaction are not known, because the government provided no witness testimony at the hearing regarding the facts of the interaction and relies exclusively on the allegations in the Indictment and conclusory attorney statements to support its claims.[1] In fact, the government cites nothing in either of its briefs to support any of the factual allegations it makes in those briefs. There is no evidence in the record to support any of the factual assertions made by the government, and accordingly, this description by the Court of the government's factual claims must be understood as completely lacking in evidentiary support.

The government asserts that "Homeland Security Investigations ('HSI') agents attempted to arrest [Mr.] Bamigboye, a Nigerian national, because he had overstayed a student visa." (Gov's Pre-Hearing Resp. 1, Dkt. No. 56.) The government alleges that when the agents approached Mr. Bamigboye and Ms. Frazier and identified themselves, the two attempted to flee in Ms. Frazier's vehicle, which prompted one agent to attempt to drag Mr. Bamigboye out of the back seat and another to get into the passenger seat, point a gun

[1] The government submitted, and the Court accepted into evidence, an audio-video recording of a post-arrest, in-custody interview of Mr. Bamigboye (Gov. Ex. 1). Neither the government nor the defense has pointed the Court to any portion of that recorded interview that bears on the issues raised by these motions.

at Ms. Frazier and attempt to force the vehicle into park. (*Id.* at 1–2.) Ms. Frazier claims that the agents never identified themselves and that, fearing for her life upon being ambushed by unidentified, armed men in tactical gear, she drove to the Plymouth, Minnesota Police Department. (Frazier Mot. to Suppress 1, Dkt. No. 51.) Upon arrival at the Plymouth Police Department, Mr. Bamigboye allegedly fled into a grocery store. (Gov's Pre-Hearing Resp. 2, Dkt. No. 56.) Both Mr. Bamigboye and Ms. Frazier were arrested. (*Id.*)

An indictment is not evidence. *United States v. Harper*, 466 F.3d 634, 645 (8th Cir. 2006). Attorney statements are not evidence. *United States v. Wadlington*, 233 F.3d 1067, 1079 (8th Cir. 2000). The government relies exclusively on attorney argument and the Indictment. The Court assumes that the alleged facts in both the Indictment and the attorney argument were provided to the prosecutor by ICE/HSI agents. The Court has been provided no testimony regarding the events of December 10, because the prosecution called no witnesses to testify. There is no body-worn camera footage of the arrest, either because the HSI agents did not wear body cameras or because the government did not provide it. The government simply asks the Court to take it and the HSI agents at their second-hand word. The Court cannot do so. Courts require evidence and therefore non-evidentiary attorney proffers are not a valid basis for deciding these motions.

## II. <u>Legal Standards</u>

### A. Motions to Dismiss

Motions to dismiss an indictment are governed by Federal Rules of Criminal Procedure 12 and 7. Rule 7(c)(1) states that the "indictment or information must be a plain,

concise, and definite written statement of the essential facts constituting the offense charged." Rule 12(b)(3)(B)(v) permits a defendant to bring a motion to dismiss an indictment for failure to state an offense. "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

Ms. Frazier also directs the Court's attention to *United States v. Quintanilla-Chavez*, 807 F. Supp. 3d 641 (W.D. Tex. 2025), a similar case in which the government charged the defendant with violations of 18 U.S.C. § 111 in relation to a botched immigration enforcement action. In that case, the court granted the defendant's Motion to Suppress and Motion to Dismiss "based on the constitutionally excessive force deployed during the Defendant's arrest" because "suppression of the evidence and dismissal of the indictment are the only relief available to the Defendant in this Court and, at this stage, the only adequate deterrent for the officers' conduct." *Id*. at 667.

**B. Fourth Amendment Warrantless Arrest**

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated…" U.S. Const. amend. IV. An arrest is a "seizure" as that word is used in the Fourth Amendment. *Torres v. Madrid*, 592 U.S. 306, 311 (2021). "A warrantless arrest violates the Fourth Amendment unless it is supported by probable cause. Probable cause exists when the totality of circumstances at the time of arrest would lead a reasonable

person to think the defendant committed or is committing a crime." *Webster v. Westlake*, 41 F.4th 1004, 1010 (8th Cir. 2022) (citing *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011); *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013)). The existence of probable cause is assessed at the time of arrest. *United States v. Adams*, 346 F.3d 1165, 1169 (8th Cir. 2003). The government has the burden of establishing the constitutional reasonableness of a warrantless seizure. *United States v. Johnson*, No. 23-CR-160 (NEB/JFD), 2024 WL 5432928, at *4 (D. Minn. Sept. 23, 2024) (citing *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984). This burden lies with the government because it "h[o]ld[s] the information upon which the motion would be based and [] demanding the defendant present the motion with particularity when he d[oes] not have sufficient access to the information place[s] too heavy of a burden upon him." *United States v. Love*, 189 F.R.D. 557, 559 (D. Minn. 1999) (citing *United States v. Losing,* 539 F.2d 1174, 1179–80 (8th Cir. 1976)). For the burden to shift to the government, a defendant's motion must only "give[] the government sufficient notice to examine the facts relating to a suppression issue and to prepare and present evidence at a hearing." *Id*.

## DISCUSSION

### I. Claimed Pleading Failures (Dkt. Nos. 49, 50, 52)

"An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense [that the defendant is alleged to have committed]." *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993). An indictment is normally sufficient if it tracks the statutory language. *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).

The controlling statute here, 18 U.S.C. § 111(a), provides the government with two pathways by which it may charge a person who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties." To charge a defendant with a misdemeanor under this statute, the government must allege and ultimately prove that the defendant "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" a federal officer in a manner that "constitute[s] only simple assault." 18 U.S.C. § 111(a). To adequately charge a defendant with a felony under the statute, as the Indictment does here, the government must allege that the defendant's actions either "involve[d] physical contact with the victim of that assault ***or*** the intent to commit another felony." *Id*. (emphasis added).

Ms. Frazier's primary argument in support of her Motion to Dismiss the Indictment is that neither the Indictment nor the government's later-filed Bill of Particulars states or shows what "other felony" the government claims she intended to commit, allowing the government to charge her with a felony, rather than a misdemeanor. (*See* Frazier Post-Hearing Br. on Mot. to Dismiss, Dkt. No. 65.) This is an accurate description of the verbiage contained in these two documents, but it does not require complete dismissal of the Indictment. The government refuses to respond to one simple question: what is the "other felony" it alleges in the Indictment and Bill of Particulars? In its pre-hearing briefing, (Dkt. No. 56), the government said it does not object to providing a Bill of Particulars, but that Bill of Particulars, (Dkt. No. 63), filed shortly before the motion hearing, does not address this issue. In its post-hearing briefing, the government provides

only conclusory argument on this issue, saying that "[t]he facts in both the affidavit in support of the complaint and the Bill of Particulars clearly establish the elements of 18 USC § 111." (Resp. 7–8, Dkt. No. 69.) The affidavit in support of the complaint is no longer before the Court because it stated that it was "submitted for the limited purpose of establishing probable cause in support of issuing a complaint and arrest warrant" after Ms. Frazier and Mr. Bamigboye were already in custody. (Getsch Aff. ¶ 2, Dkt. No. 1-1.) The Court will not consider the affidavit because (1) it is an affidavit, not witness testimony subject to cross-examination, and (2) as the quoted language above in this paragraph shows, it was prepared for a limited purpose and that purpose was satisfied when a criminal complaint issued. But even if the Court were to consider the affidavit, it suffers from the same deficiency as the Indictment and the government's briefing; it simply does not identify the "other felony" that it alleges Ms. Frazier and Mr. Bamigboye intended to commit.

The Court on its own cannot identify what "other felony" the government alleges the Defendants intended to commit, and any attempt by the Court to do so would be pure speculation. With the information available, the defendants are not fairly informed of the charges against which they must defend, as to the "other felony" clause of 18 USC § 111. An element of the charged offense, under that clause, is that the accused intended to commit another felony. To defend against that charge, the Defendants must know what other felony they are alleged to have intended to commit. The Court agrees with Ms. Frazier that if the government seeks to pursue this case as a felony on the grounds that the alleged interference with federal officers involved the commission of another felony, the

government must state what that felony is, so she may be on notice of the charges against her.

But intent to commit of another felony is only one way in which the government can charge and prove that a felony was committed under the statute. A felony violation may also be charged and proven if the interference "involve[d] physical contact with the victim of that assault." 18 U.S.C. § 111(a). The statute uses the disjunctive "or" in setting off the "physical contact" clause for enhancement to a felony from the "another felony" clause, rather than the conjunctive "and," which would require the government to allege and prove both. For the government to adequately allege a felony under the "physical contact" clause, the government need only allege that the assault involved physical contact, which the Indictment indisputably does. (Indictment, Dkt. No. 18.) That the Indictment uses the conjunctive rather than the disjunctive is not dispositive of the issue because the government may pursue a felony conviction under either or both felony enhancement clauses.

Accordingly, the Court recommends that Ms. Frazier's Motion for a Bill of Particulars (Dkt. No. 49), Ms. Frazier's Motion to Dismiss for Failure to State an Offense (Dkt. No. 50), and Mr. Bamigboye's Motion to Dismiss or for a Bill of Particulars (Dkt. No. 52) be granted in part and denied in part. To the extent that the government is pursuing the felony enhancement in 18 U.S.C. § 111(a) on the theory that Ms. Frazier intended to commit another felony, the government should be ordered to identify that other felony in a supplemental Bill of Particulars. If the government persists in its refusal to identify that other felony, the government should be barred from presenting evidence in support of that

theory at trial or arguing that theory to the jury. To the extent that the government is pursuing the enhancement on the theory that Ms. Frazier's acts involved physical contact with the victim, the Court recommends finding that the Indictment, paired with the existing Bill of Particulars (Dkt. No. 63), is sufficient to allege the felony offense in 18 U.S.C. § 111(a).

## II. Constitutional Violations at Arrest (Dkt. Nos. 51, 53, 54)

### A. Fourth Amendment Violations

After a defendant "gives the government sufficient notice to examine the facts relating to a suppression issue and to prepare and present evidence at [a] hearing," the government bears the burden of preparing and presenting evidence at a hearing to prove that an arrest was supported by probable cause. *United States v. Love*, 189 F.R.D. 557, 559 (D. Minn. 1999). Here, the government declined to provide any evidence at all. This prosecutorial decision makes it impossible for the Court to make any finding other than that the government has not met its burden. At the hearing, the Court questioned the Assistant U.S. Attorney about this choice to ensure he understood the ramifications of the decision. The reply was that the government would rely on the statements in the Indictment and attorney argument. The Court therefore concludes that the arrests on December 10, 2025 were not supported by probable cause and therefore violated the Fourth Amendment rights of Mr. Bamigboye and Ms. Frazier.

Even if the Court were to accept the government's conclusion that Mr. Bamigboye overstayed his student visa, that conclusion does not provide probable cause for a warrantless arrest. "As a general rule, it is not a crime for a removable alien to remain

present in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Therefore, "[i]f the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Id. See also, United States v. Hansen*, 599 U.S. 762, 804 (2023) (Jackson, J. and Sotomayor, J., dissenting) ("while it is a crime for a noncitizen to *enter* the United States illegally, it is generally not a crime—just a civil violation—to *remain* in the United States without lawful status, such as when a noncitizen overstays a visitor or student visa.") (emphasis in original).

Overstaying a student visa was exactly what Mr. Bamigboye was alleged to have done when he was arrested. The government, therefore, must show that Mr. Bamigboye's arrest was justified by his violation of the civil immigration laws, and that federal officers complied with the applicable civil immigration arrest statutes. In parallel habeas corpus proceedings brought by Mr. Bamigboye, this Court recently held and recommended that the government did not comply with the law when arresting Mr. Bamigboye. *See Bamigboye v. U.S. Dept. of Homeland Sec.*, Case No. 26-CV-3321 (JWB/JFD), Report & Recommendation, Dkt. No. 12 (Aug. 11, 2026). That recommendation was accepted in relevant part by the District Judge assigned to the parallel habeas corpus case, the Honorable Jerry W. Blackwell. *Bamigboye v. U.S. Dept. of Homeland Sec.*, Case No. 26-CV-3321 (JWB/JFD), Order, Dkt. No. 16 (Aug. 24, 2026). As the Court concluded in that case, Mr. Bamigboye's later immigration arrest, made after he was taken into custody on the present criminal charges, "was unlawful on Fourth Amendment grounds because the Notice to Appear was issued after the I-200 administrative warrant." *Id*. at 8. Both of those documents were issued days after the December 10, 2025 arrest here, with the I-200 being

issued on December 14, 2025 and the Notice to Appear dated December 17, 2025. *Id*. at 6; (*see also* Def. Ex. 1). The government has given the Court no reason to change that conclusion, and since the Notice to Appear and I-200 were issued after the December 10, 2025 arrest at issue here, they cannot support that arrest either.

The government argues that the warrantless arrest of Mr. Bamigboye was authorized under 8 U.S.C. § 1357(a) because the agents had probable cause to believe that he was not lawfully present in the country and was likely to escape. (Gov.'s Post-Hearing Br. 9, Dkt. No. 69.) But again, the government has provided nothing but the Indictment and attorney argument to support that contention, meaning that it has not met its burden to show that the arrest was lawful, under either civil immigration law or for any criminal offense. (*Id*.)

The remedy for an illegal arrest is the suppression of any evidence obtained as a result of the arrest. *United States v. Williams*, 604 F.2d 1102, 1123 (8th Cir. 1979). Accordingly, the Court recommends granting the Motions to Suppress (Dkt. Nos. 51 and 53) in full and suppressing any and all evidence derived from the unconstitutional arrests in this case. This certainly includes the post-arrest, in-custody interview with Mr. Bamigboye and testimony from the agents present on December 10, 2025 about their interactions with Ms. Frazier and Mr. Bamigboye. The Court finds that this evidence is fruit of the unconstitutional arrest. It is not entirely clear from the record if there is additional prosecution evidence that must be suppressed as fruit of Mr. Bamigboye's unconstitutional arrest. The Court therefore directs both the prosecution and the defense, within one week of this Report and Recommendation's date, to provide memoranda to the Court on the question of whether additional evidence subject to suppression as fruit of the

illegal arrest exists, and specifically whether the Court must also recommend that observations of Mr. Bamigboye's and Ms. Frazier's behavior at the time of arrest—in other words, the evidence which forms the basis of the charges in this case—must also be suppressed. The Court will not consider the government, by providing such a memorandum, has waived any objection it wishes to make to this Report and Recommendation.

**B. Excessive Force (Dkt. No. 54)**

Ms. Frazier also seeks dismissal as a remedy for the constitutional violations she alleges in a separate Motion to Dismiss (Dkt. No. 54). In support of her contention that the agents' behavior in this case serves as grounds to dismiss the Indictment, Ms. Frazier points to *United States v. Quintanilla-Chavez*, 807 F. Supp. 3d 641 (W.D. Tex.). That case, though not binding on this Court, has certain similarities that warrant consideration.

The defendant in that case was also charged with a felony violation of 18 U.S.C. § 111 after being approached in his vehicle by federal immigration authorities, and the government was pursuing the felony provisions of Section 111(b), claiming that the defendant injured an HSI agent who scraped his arm while punching through a car window during the stop. *Id*. at 648. In *Quintanilla-Chavez*, HSI agents stopped a truck with the intent of arresting the defendant without a warrant, as was the case here. *Id*. at 650. "Events escalated quickly," leading to the HSI agent deciding to break the window. *Id*. After some back and forth, the defendant was detained, and only then did the agents ask him anything about his immigration status. *Id*. The court in that case had the benefit of both body-worn

camera footage and testimony of the agents on the scene, neither of which exist on the record before this Court.

Relevant here, the *Quintanilla-Chavez* court held that,

> The agents' conduct at the scene does not meet th[e] demanding threshold [for conscience-shocking conduct]. The agents had reasonable suspicion to stop the Defendant's truck, and based on settled precedent, their commands to roll down the window and/or exit the vehicle were lawful. While the agents' conduct in effecting the arrest—pulling the Defendant out of the vehicle, pinning him to the ground, and handcuffing him while cursing at him—is disturbing, the Court cannot conclude that it was "so 'brutal' and 'offensive' that they did not comport with traditional ideas of fair play and decency," or that the agents had "a purpose to cause harm unrelated to the legitimate object of arrest." Further, it is disturbing that HSI supervisory or managerial personnel are apparently encouraging that car windows be summarily broken, but the parameters of these verbal or written directives were not fully explored at the hearing in this case.
>
> Although the officers' force at the time of Defendant's arrest was constitutionally excessive, the Court will not dismiss the indictment on the independent basis that the official conduct at the scene was conscious [*sic*] shocking.

*Id*. at 668 (cleaned up). Accordingly, the court rejected the argument that the excessive force at the point of that arrest, on its own, constituted a Fifth Amendment violation that required dismissal. Rather, the court dismissed the charges looking at the larger picture of government misconduct in the case, including flaws in the HSI investigatory process, the failure of the HSI agents to explain the grounds for an unwarranted stop or ask immigration questions until after the arrest, agents' "feigned concerns for their safety," the speed with which the agents escalated to the use of force, the excessive force involved, and the "admission that HSI deploys some form of break car windows first and ask questions later policy." *Id*. at 669. The court stated, "[m]ost egregiously, however, the Government has charged the Defendant with 'forcibly' resisting a federal officer based on *the officer's use*

*of force*, [which] violates the principle of 'fundamental fairness' by allowing an immigration officer to systematically circumvent the warrant requirement by manufacturing a felony." *Id*. (emphasis in original).

The concern in this case is, again, that no evidence of the sort available to the *Quintanilla-Chavez* court exists in this case, because the government provided no evidence at all other than a tape-recording of Mr. Bamigboye's post-arrest interview, and the defendants followed suit by declining to put into the record any evidence of their own other than some immigration documents. On the record before it, this Court cannot come to the same conclusion as the *Quintanilla-Chavez* court. The general lack of evidence in this case that led the Court to conclude above that the government did not meet its burden to show that the arrest was lawful also requires a conclusion that Ms. Frazier has not met her burden to show outrageous government conduct. *United States v. Bugh*, 701 F.3d 888, 893 (8th Cir. 2012).

Ms. Frazier has credibly alleged that a federal officer jumped into her car, wrestled with her for control of the vehicle, pointed a loaded gun at her head while she was operating a motor vehicle, and that the vehicle which Ms. Frazier was driving was rear-ended by a pursuing law enforcement vehicle during the time that the officer inside the vehicle was pointing a loaded pistol at Ms. Frazier. (Mot. to Dismiss 1–2, Dkt. No. 54.) At no point has the government contested Ms. Frazier's allegations. In fact, it largely agrees with her recitation of events. (Gov.'s Pre-Hearing Resp. 2–4, Dkt. No. 56 ("As Frazier began driving, … the HSI agent in the front-passenger seat remained in the vehicle … [and] attempted to put the vehicle in park, but Frazier knocked his hand away. At one point the

agent drew his firearm and ordered Frazier to stop, but she continued to drive the vehicle"); Gov.'s Post-Hearing Resp. 5–6, Dkt. No. 69.) The Court notes that this was for a non-criminal student visa overstay.

The Court therefore recommends that Ms. Frazier's Motion to Dismiss (Dkt. No. 54) be denied without prejudice

## ORDER

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Ms. Frazier's Motion for Discovery of Expert Under Rule 16(a)(1)(G) (Dkt. No. 47) is **GRANTED;** and
2. Ms. Frazier's Motion for Grand Jury Transcripts (Dkt. No. 48) is **GRANTED.**

## RECOMMENDATION

Further, IT **IS HEREBY RECOMMENDED** that:

1. Ms. Frazier's Motion for a Bill of Particulars (Dkt. No. 49) be **GRANTED in part and DENIED in part;**
2. Ms. Frazier's Motion to Dismiss the Indictment (Dkt. No. 50) be **GRANTED in part and DENIED in part;**
3. Ms. Frazier's Motion to Suppress (Dkt. No. 51) be **GRANTED;**
4. Mr. Bamigboye's Motion to Dismiss or for a Bill of Particulars (Dkt. No. 52) be **GRANTED in part and DENIED in part**;
5. Mr. Bamigboye's Motion to Suppress (Dkt. No. 53) be **GRANTED**; and

6. Ms. Frazier's Second Motion to Dismiss (Dkt. No. 54) be **DENIED without prejudice**.

Date: September 1, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).